NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SARAH R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, Z.L., *Appellees*.

No. 1 CA-JV 18-0405
FILED 3-12-2019

Appeal from the Superior Court in Maricopa County
No. JD31207
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Laurie Blevins
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**        Sarah R. ("Mother") appeals the juvenile court's order terminating her parental rights to Zyonna. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother has two children: Meiyah, born in 2013, and Zyonna, born in 2016.[1] In September 2015, the Department of Child Safety ("DCS") received a report that Mother had been court ordered into treatment at a hospital for her mental health, and DCS took physical custody of Meiyah. Four months later, Mother gave birth to Zyonna. Zyonna tested positive for marijuana at birth, and DCS took physical custody of her.

**¶3**        DCS filed separate petitions for dependency, alleging Meiyah and Zyonna were dependent as to Mother due to abuse or neglect. In February 2016, the juvenile court found Meiyah and Zyonna dependent. Throughout the pendency of Mother's case, DCS offered her services, including a parent aide, a psychological evaluation, a substance-abuse assessment, drug testing, mental health services, and transportation. Mother was also offered supervised visitation.

**¶4**        Mother has an admitted history of marijuana use. She first used marijuana when she was eight years old, has consistently used it since she was sixteen years old, and testified she continued to use marijuana almost daily up until the time of termination. DCS referred her for drug testing multiple times, but she was mostly noncompliant.

---

[1]        Meiyah and Zyonna have different biological fathers. The juvenile court terminated Zyonna's father's parental rights, and he is not a party to this appeal. The Department of Child Safety initially moved to terminate both parents' rights to Meiyah, but subsequently amended its motion to only seek termination of both parents' rights to Zyonna.

¶5        Mother has also been diagnosed with schizoaffective disorder. Psychologist Dr. Jessica Leclerc testified schizoaffective disorder "is a combination of schizophrenia and bipolar disorder essentially . . . you'll have periods of schizophrenia and then on top of that you'll have these mood episodes." Dr. Leclerc did a psychological evaluation with Mother and concluded at the time of the assessment that Mother's schizoaffective disorder was in full remission. Dr. Leclerc testified, however, that a person can still exhibit symptoms and characteristics of schizoaffective disorder when in full remission. Mother began mental-health treatment at Valle del Sol in approximately July 2017. At the time of termination, the juvenile court found she was medication compliant.

¶6        Mother underwent psychological evaluations in early 2016 and in November 2017 with two different psychologists. She also completed a best-interests evaluation with a third psychologist in August 2017. Each psychologist reported concerns about Mother's ability to parent given her mental health diagnosis and her substance abuse. Each psychologist determined Mother would not be able to adequately parent Zyonna until she received mental-health treatment, maintained sobriety, and learned and implemented effective parenting skills.

¶7        DCS also offered Mother two parent-aide services. Her first parent-aide service was closed out unsuccessfully due to missed visits and Mother's failure to meet her goals. Mother's final parent-aide service was unsuccessfully closed out in July 2018. According to parent-aide reports, Mother was unable to enhance her protective capacities as evidenced by her frequent no shows and cancellations.

¶8        In May 2018, DCS moved to terminate the parent-child relationship between Mother and Zyonna based on Mother's mental illness, her history of chronic substance abuse, and Zyonna's cumulative out-home-placement for 15 months or longer. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(c). Following a three-day termination hearing, the juvenile court found DCS proved by clear and convincing evidence the three statutory grounds for termination.[2] The court also found DCS proved by a preponderance of the evidence that termination of Mother's parental rights was in Zyonna's best interests. Mother timely appealed, and we have

---

2        In August 2017 the juvenile court held a hearing on a previously-filed, amended motion to terminate Mother's parental rights to Zyonna. The court denied the motion.

jurisdiction under A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**A.    The Juvenile Court Did Not Err by Finding DCS Proved by Clear and Convincing Evidence the Statutory Grounds for Termination.**

**¶9**         A court must find at least one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence to terminate a parent-child relationship. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find termination is in the child's best interests by a preponderance of the evidence. *Id.* We review the court's termination decision for an abuse of discretion, do not reweigh evidence on appeal, and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**¶10**         Under A.R.S. § 8-533(B)(8)(c), the juvenile court may terminate a parent-child relationship if:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . ., the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

DCS must also make a "diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8).

**¶11**         Mother does not dispute that Zyonna has been in out-of-home placement for more than 15 months. Nor does she argue DCS failed to make a diligent effort toward providing appropriate reunification services. As the juvenile court noted, Mother participated in or had access to numerous services, and the court appropriately found DCS "made diligent efforts in providing an array of reunification services and had those services been successfully completed, reunification likely would have occurred."

**¶12**         Mother instead challenges the juvenile court's finding she will be unable to parent Zyonna in the future effectively. She contends she has

housing and sufficient income to meet Zyonna's needs and the parent aide's notes reflect that Mother was able to provide Zyonna with proper meals and activities. She further contends the parent aide's criticisms of Mother do not rise to the level of establishing that Mother is not a minimally capable parent.

¶13 The juvenile court found Mother has been unable to remedy the circumstances that caused Zyonna to be in out-of-home placement and that she has failed to demonstrate "minimally adequate parenting under the supervision of a parent aide." The court's order also noted a parent aide's report that Mother had arrived at visits under the influence and that Mother was unable to progress to unsupervised visits with Zyonna. The court further noted Mother "has not successfully completed any parent aide service, and has reflected worrying behaviors during each parent aide service, and her best interest assessment with Dr. Mastikian." Although the court made the first two findings regarding whether Mother can discharge her parental responsibilities under the mental health and substance abuse grounds, they also support the court's conclusion that Mother has not been able to demonstrate adequate parenting.

¶14 DCS referred Mother for two parent-aide services. Both were closed out unsuccessfully, the latter in July 2018. At the midpoint of that parent-aide service, the parent aide reported that Mother's behavioral, cognitive, and emotional protective capacities had diminished, including Mother's ability to demonstrate adequate skills, recognize threats, and understand her protective role. The parent aide also reported diminished protective capacities in the categories of whether Mother meets her own emotional needs and whether she is resilient, tolerant, or stable. Mother missed multiple skill sessions and visits in June and July 2018, and the parent-aide service was ultimately closed out in part due to no shows and cancellations.

¶15 Dr. Robert Mastikian, the psychologist who conducted the best-interests evaluation, also testified that he had concerns about Mother's interactions with both her children. Dr. Mastikian testified the "interaction did not seem overall nurturing," Mother seemed confrontational toward Meiyah, and Mother did not display appropriate affection. The psychologist explained that while most of his concerns were about Mother's interactions with Meiyah, if Zyonna had been able to talk, Mother's behavior likely would have manifested regarding Zyonna as well. The juvenile court noted this testimony in its termination order.

¶16      Although the parent aide reports describe several positive interactions between Mother and Zyonna, the juvenile court received all the evidence and ultimately concluded Mother had been unable to demonstrate "minimally adequate parenting" or remedy the circumstances that caused out-of-home placement. The juvenile court is in the best position to resolve disputed facts, and reasonable evidence supports its findings. *See Oscar O.*, 209 Ariz. at 334, ¶ 4.

¶17      The court further found that in addition to being unable to demonstrate minimally adequate parenting, Mother was also unable to show sobriety and that "[w]hile she continues to engage in mental health services, and is medication compliant, such treatment has not been sufficient to resolve the challenges to her parenting." Mother argues the juvenile court erred by relying on her continued use of marijuana as evidence she was incapable of exercising proper and effective parental care and control. She contends no evidence demonstrated that Mother's marijuana use impeded her ability to parent Zyonna.

¶18      Throughout Mother's case, three psychologists have reported concerns about her ability to parent Zyonna given her substance abuse and mental health. In March 2016, Mother underwent a psychological evaluation with Dr. Jennifer Jones-Greenspon. Dr. Jones-Greenspon reported "until [Mother] is able to gain control over her mental health symptoms, learn and implement effective parenting, relationship, and coping skills, and maintain sobriety," Zyonna likely would not be safe from neglect and physical abuse. She further reported, "[i]f unable to learn and/or implement these skills, it is possible she will not be able to effectively and safely parent her children."

¶19      Then, 18 months later, following the best-interests evaluation, Dr. Mastikian recommended Zyonna remain with her current placement indefinitely and reported Mother's use of marijuana was "of great concern." He opined that the bond and attachment between Mother and Zyonna "does not appear to be healthy or functional at this time, quite possibly due to her untreated mental health condition and active cannabis use."

¶20      Finally, in November 2017, Mother completed the second psychological evaluation. Dr. Leclerc noted that Mother's schizoaffective disorder was in full remission and that Mother was currently medicated. However, Dr. Leclerc reported Mother "would be unable to parent given her ongoing substance use and delusional thought processes as they would place the children at risk for neglect." The psychologist further stated until Mother "is sober, actively taking her prescribed psychotropic medications,

successfully completes parenting classes, successfully completes Parent Aide services, and can demonstrate positive and effective parenting skills, she is unlikely to be able to safely parent her children." She further explained that "the prognosis is very poor that she will be able to complete all required services successfully and maintain stability for a significant period of time."

¶21 Mother argues that by the time of the termination of hearing, the psychologists' reports were outdated and did not account for her current medication or mental health status. *See Jordan C. v. ADES*, 223 Ariz. 86, 96, ¶ 31, n.14 (App. 2009) (A.R.S. § 8-533(B)(8)(c)'s reference to "circumstances that cause the child to be in out-of-home placement" means the circumstances that exist at the time of termination). Mother has used the same medication for her mental-health treatment since July 2017. Thus, she was on the same medication at the termination hearing and during her psychological evaluation with Dr. Leclerc. Dr. Leclerc testified at the termination hearing that her prognosis from her report would not change even if Mother is still taking her medication "[i]f she's actively using illicit substances."

¶22 Additionally, after Mother's psychological evaluation with Dr. Leclerc, she began her second parent-aide service, which was ultimately closed out unsuccessfully shortly before the termination hearing. In finding a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future, the juvenile court explained:

> Mother's mental health and substance abuse issues are both chronic. Schizoaffective disorder is treatable, but not curable. Although Mother is managing that illness, the treatment has not resulted in her enhancing the necessary protective capacities for parenting Zyonna. Mother has never demonstrated sobriety during the case and there is no reasonable basis for believing she will do so.

Mother does not deny she has a significant history of marijuana use or that she continued to use marijuana at the time of termination, despite repeated recommendations to maintain sobriety. Her most recent parent aide continued to report diminished protective capacities, and Mother's failure to complete the service successfully. Accordingly, the juvenile court did not abuse its discretion by finding Mother was unlikely to be able to exercise proper and effective parental care and control over Zyonna. The court also did not err by finding DCS proved by clear and convincing evidence the

statutory ground for termination based on Zyonna's out-of-home placement.[3]

## B.     The Juvenile Court Did Not Err by Finding DCS Proved by a Preponderance of the Evidence that Termination was in Zyonna's Best Interests.

**¶23**        Mother also argues the juvenile court erred by finding that termination was in Zyonna's best interests. She contends the court's best-interests determination was "tainted by its incorrect determination that Mother's use of marijuana renders her incapable of properly parenting her child." But as discussed above, reasonable evidence supports the court's finding that there is a substantial likelihood that Mother will not be capable of exercising proper and effective parental care and control in the near future. Reasonable evidence also supports the court's best-interests determination.

**¶24**        At the best-interests stage, we "presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Alma S. v. DCS*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35). The court's primary concern during the best-interests inquiry is the child's stability and security. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). Termination is in the child's best interests if the child will benefit from termination or will be harmed if termination is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13. "Courts must consider the totality of the circumstances existing at the time of the severance determination." *Id.* at 150–51, ¶ 13. "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L.*, 239 Ariz. at 4, ¶ 12.

---

[3]        Because we affirm the juvenile court's order terminating Mother's rights to Zyonna based on the time-in-care ground, we need not address Mother's arguments that the court erred by finding DCS proved the grounds for termination based on Mother's mental health and substance abuse. *See Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

¶25        A DCS caseworker testified termination would give Zyonna permanency by providing her with a safe and stable home that can meet all her needs. Zyonna's foster father testified she has been in his care since one week after her birth and that he was willing to adopt her. The caseworker testified the current placement was meeting all of Zyonna's needs, but that should her current placement not be able to adopt her, she was adoptable.

¶26        In making its best-interests determination, the juvenile court found Zyonna was adoptable, in an adoptive placement, and the current placement was the "least restrictive environment required to meet Zyonna's needs." The court also recognized Dr. Mastikian's concerns about Mother's parenting and the "nature of Mother's bond with her children." Finally, the court found Zyonna was "thriving in her current placement," and that "[t]ermination would give her the benefit of permanency in a safe, stable, loving environment." Thus, the court found termination of Mother's rights to Zyonna was in Zyonna's best interests. The record supports the court's findings, and the court did not err by finding termination was in Zyonna's best interests.

## CONCLUSION

¶27        For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to Zyonna.



AMY M. WOOD • Clerk of the Court
FILED: AA